And we'll move to our fourth argument of this morning in Appeal Number 22-1502, the United States v. Tobias Diggs. Yeah, it's Miss Eisenman, right? Yep, good morning. May it please the Court, Vanessa Eisenman on behalf of Tobias Diggs. This case should be remanded for a new trial during which Mr. Diggs' wife, Devon Adams, should be allowed to invoke her spousal testimonial privilege. Again, we currently have a circuit split with this court being the only court on the side that recognizes the joint participant exception in the context of the spousal testimonial privilege. The four other circuit courts to have decided this issue have decided to reject it in that context. So there's a current circuit split. This court could resolve that circuit split by reconsidering and rejecting the joint participant exception. The case that is most recently from this court is 40 years old. So for those reasons, it's kind of ripe for reconsideration. Besides which, that case, Clark, the rationale that it gave for continuing the joint participant exception in this context is really mooted by Trammell, and Clark just doesn't really acknowledge that. Trammell, as this court undoubtedly knows, decided to vest the opportunity to invoke the spousal testimonial privilege only in the witness spouse, therefore eliminating the prospect that the defendant would simply enlist his spouse as a co-conspirator without any fear that she could testify against him because he could just invoke the privilege. Now that's only vested with the witness spouse, therefore there's no more fear of that happening. And that was Clark's primary rationale, even though Clark came after Trammell. It still said that that was the primary reason why we needed the joint participant exception. And again, all of these other courts to have decided this issue after have not been persuaded by that. The most recent one is the First Circuit in the Pieda-Montejo case. Really did a nice job of laying out why Clark's reasons are no longer really applicable and deciding to join the other three circuits that have rejected that exception. So again, I think this is a prime example and a good case for this court to take another look at that and reject that exception just in this context, not in the context of the marital communications privilege, just in the context of the spousal testimonial privilege. If this court decides not to do that, our next argument is that, okay, even if you don't want to deal with Clark right now, it doesn't apply to Ms. Adams because she was never a joint participant. If you look at all of the cases that we talk about in our briefs, you look at the Van Duren case, you look at Clark, you look at Trammell, you look at Westmoreland, in all of those cases, there's no question that the spouse was a joint participant, right? The only question is really kind of when does it kick in or should we recognize it in a certain context? There's no doubt. In Trammell, she was a drug court conspirator. In Van Duren, she was the illegal alien that was transported over the border. In Parker, the wife helped kidnap and murder the victim. Is that the test, though, no doubt? No. No, because the issue here is abuse of discretion, right? I mean, if we say that Clark is still good law and there's no reason to overturn it, the issue here is one of abuse of discretion. The district judge abused his discretion in viewing the witnesses and viewing the testimony. We don't get any of that. I mean, that's why it's such a high burden, and it's not, you know, so I'm not sure that comparing it to cases where there's no doubt that the spouse participated as to this case where admittedly it's close, okay?  It's close. But what about the standard? Tell me about the standard. No, that's a good point. That's a good point. I'm not trying to say that it has to be a no-doubter, and you're absolutely right. The first issue that I mentioned about whether this court should continue that exception, that's de novo. We're not on that anymore. We're on abuse of discretion. But we still have the trial testimony, and that's what we need to base this on, okay? And then trial testimony, page 33 of our appendix. Ms. Adams says that she didn't even know what was going on until she started Googling. So she gets this frantic call from her husband saying, I just hit a J spot, and you got to come get your car because it's all over the news. She is frantic. She doesn't know. There's absolutely zero evidence, whether it's at the Santiago Proffer or anywhere else, that she knows anything about this robbery. But she's not his wife at the time, and she doesn't hang up the phone and call the police. I think that was part of Judge Feinerman's finding. She then takes actions which are consistent with helping him. Whether he's right or wrong, okay, that's not the test. But that's what he found. And how do we conclude that that was so wrong that it was an abuse of discretion based on this record, where admittedly there are two, there are certainly two sides of this coin? So there are two things that she does and that the district court Judge Feinerman touched on. First, she texts her dad and She says, I got to go get my car, right? She says, can you, would it be possible for you to take me back? But she wants to go get her car. She says she's frantic, she doesn't know what's going on, and she just Well, her boyfriend just told her what was going on. She just wants her car back. That's her trial testimony. He just robbed a jewelry store. We don't have anything else but that. She's frantic. She gets this call. She wants to get her car back. She says absolutely nothing about wanting to conceal that car. That's where the inference kicks in, right? She says nothing about concealing that. Maybe she wants to go get the car from the cops and thinks the car is with the cops. We don't know. That's not in the trial testimony. The trial testimony is that she was frantic. She didn't even know what was going on. She wasn't even sure by J-Spot he meant jewelry store until she started Googling it. And that comes into our next argument, that even if you think she was a joint participant at some time, she certainly wasn't when he said the J-Spot or made the initial J-Spot call. But getting back to the other one, she contacts her family members to see if they could possibly give her a ride back. That's all we have in the trial testimony. She was frantic. She didn't know what was going on. She just wanted her car back. What also is in the trial testimony is that she decided not to do anything about it because she didn't want to be involved. Once she had an idea of what actually was going on, she decided she did not want to be involved. So for the district court to say that she is definitely a joint participant, she's a conspirator just by asking if somebody can give her a ride back to Chicago, that is an abuse of discretion. And even if this court does not agree with that, again, the biggest thing that came in in her testimony was the J-Spot call, the initial call. She doesn't know anything about it. This is the first she's hearing about it. I think abuse of discretion is a tough, high standard. I think an even tougher, higher standard is harmless error. So can you address that more than you did in your brief? Sure. You've given the phone records that connect Mr. Diggs to the area of the robbery, to Atlanta, where the man whose name I don't know how to pronounce was offered watches, to the testimony from the other girlfriend that she was given the car. What's your response? Yeah, absolutely none of that is a wife getting up on the stand and telling the court that my husband confessed to a crime. Again, the test is not sufficiency of the evidence. We have not made a sufficiency of the evidence claim here. The test is whether the offending testimony has a substantial effect on the jury's verdict. Isn't the corollary test whether the other untainted, incriminating evidence could lead to a conviction? Not could lead to a conviction is overwhelming, is I believe what this court says. It's overwhelming. Not sufficient evidence, overwhelming. And I don't think it's overwhelming because, again, this is a wife's testimony. We have a privilege just because of the importance of this, right? The Supreme Court says sanctity of marriage. We've got to protect this. There is nothing more unseemly than a wife getting up on the stand and saying my husband told me he did it, right? That is powerful. The government even calls it super powerful evidence. The government spends five pages talking about her testimony in its closing statement. Clearly the government didn't even think that her testimony, without her testimony, sorry, that her testimony, clearly the government even thought that her testimony was very important. The phone records, again, that was disputed at trial. There was a big dispute about was there enough evidence to connect that 901 number to Mr. Diggs. So that was disputed. There was other circumstantial evidence that came in about cell site records. Again, this is all circumstantial evidence. The only direct evidence of a confession came from the wife. The only direct evidence that he was seen afterwards with stolen jewelry came from Silk's improper hearsay testimony that was injected that I'm not going to get a chance to discuss. So anyway, for all of those reasons, we would ask that whichever basis this court wants to do it, that it remand the case to the district court for a new trial where Ms. Adams is allowed to invoke her privilege. Thank you. Okay, very well. Okay, we'll hear from the government. May it please the court, Georgia Alexakis representing the United States. The defendant's convictions should be affirmed. Those convictions were based on properly admitted evidence, including testimony from defendant's then girlfriend, now wife, who the district court correctly found was a joint participant in the offense and thus subject to this circuit's longstanding recognized exception, the joint participant exception to the spousal testimonial privilege. Defendant's convictions were also based on an overwhelming amount of additional evidence. The judge, Jackson Okwumi, nicely recapped during counsel's earlier argument. All of that evidence, setting aside the J-spot call, that so-called J-spot call, linked the defendant to the robbery. That includes the Lexus SUV that was used to commit the robbery, and defendant's undisputed multiple connections to that vehicle, as well as all of the phone-based records that showed the defendant in contact with the robbery crew in the months leading up to the robbery and on the morning of the robbery that showed the defendant 1.5 miles away from the jewelry store, which was a 35-minute drive from his home, and that he was at that location on the morning of the robbery and for the precise duration of that robbery, supporting the government's theory of the defendant's phone being used as a walkie-talkie system to facilitate the robbery. So I have a question on this. The harmless error aspect of the case does not seem all that easy to me, and the reason is not because of what you just said about the strength of the evidence that the government marshaled to show that Mr. Diggs committed this robbery, but rather under the governing standard for harmless error on a non-constitutional error that, as you well know, comes from the U.S. Supreme Court in Cadillacus, that we have parroted over and over again. We have to look at whether we can say with fair assurance that the error did not sway the jury. When I read the government's closing argument, it quite understandably featured Ms. Adams' testimony and then used everything else that you're pointing to right now, and I get why you are, to reinforce that. It used everything else as corroborative as making sense of that. But doesn't Ms. Eisenman have a fair point that in front of the jury, what's doing all of the anchoring for everything is Ms. Adams' testimony? Judge, I understand the question, and I understand the persuasiveness of the defendant's argument. I have spent a lot of time thinking, what would this trial look like if Ms. Adams had not testified? Okay, I'm really happy. Thank you for saying that. Okay, that's exactly what I was thinking in preparing, and I've convinced myself, maybe you'll persuade me I'm wrong, that's not the right question. That isn't the question under the cadiacus standard of review, and it's not the way we have articulated it. In other words, you can't do that. That's precisely the error that I think I've made. In other words, you need to look at the way the case was presented to the jury, okay? And then ask yourself whether you can say with fair assurance that the verdict was not substantially swayed by the error in question. Put differently, it's not about a dialogue that you and I can have right now in the Seventh Circuit about the strength of evidence. Rather, we need to kind of transport ourselves back to the jury room, mindful of the way the case was presented, and that's what brings me back to the way Mr. Parente argued it in closing argument. And I'm not faulting him for that. It had a very powerful anchoring effect. I understand, Judge. What I would point you to are the same things that I looked at when I was preparing for argument today, and certainly I looked at the government's closing argument. I also looked at the opening statement where Ms. Adams' testimony is not mentioned at all to the jury. And then I looked at the rebuttal. Well, that's probably because they weren't sure that she was going to hit the stand, right? I mean, usually that's what government lawyers do is they don't want to preview testimony that actually doesn't take place. I can't disagree with that based on experience, Judge Kirsch, but when I'm putting myself in the position of what was the presentation to the jury to put myself in the jury's shoes, I know that in the opening statement they didn't hear anything about Adams. They heard no promises about a confession that would have been conveyed to the defendant's wife. When we get to the rebuttal, I want to emphasize that now we're in the government's rebuttal. It's a 20-page rebuttal. There's a one-sentence reference to the J-spot phone call. The rest of the rebuttal is dedicated to the other evidence. And then going back to the closing argument, yes, there are five pages, approximately five pages that are spent talking about Ms. Adams' testimony. Before you get to Adams' testimony, there's a long discussion about the text messages and the phone evidence. And then there's an insertion of Ms. Adams' testimony. And there's five pages on the Lexus. And then there's 24 more pages going back to the phone evidence. And I believe what the prosecutor says on page 1380 of the transcript, the 901 number proves he's the robber. So from the government's standpoint, that phone evidence was what had a substantial influence on the jury's verdict. Because Adams' testimony, as powerful as the government concedes that it is, was also subject to strenuous attack from two defense counsels in the course of cross-examination, undercutting Adams' exploring all the biases, all of the reasons why she would have to testify against her husband. And that was laid out for the jury quite clearly throughout the trial, given the presence of another girlfriend, of the mother of another child for the defendant. And so it's not a situation where, yes, the government, I can't change the words of the prosecutor during the closing argument. He did refer to it as powerful evidence. But I think when viewed in context of the entire trial, it's clear that that was not that piece of evidence that had a substantial influence on the jury, given, and going back to the standard, other untainted, incriminating evidence that, in the government's view, was clearly overwhelmed. Can I get the benefit of your, let's go to the trammel point. Yes. We haven't grappled with the effect of trammel on von Drunen with the kind of rigor and thoroughness that you might expect. And, you know, you say, well, this case presents that opportunity, so grapple with it and affirm it, is your point, that way. What is it, though, about if you take the recent decision that Judge Torway had drafted for the First Circuit that way? I find, well, I think one thing that's important to note about Pineda-Matteo is that Pineda-Matteo spends a solid three pages explaining why trammel does not actually answer the question, that the defendant says trammel, in fact, mooted. Well, that's because of the way, that's because of what went on in the Tenth Circuit, because of the joint, but keep going. I think it's the fruit of the way the case was litigated. I understand, but if defendant's point, and I think this point comes up multiple times in the reply brief, is that von Drunen's logic is no good because there's no reason to have a joint participant exception post-trammel, I think Pineda-Matteo would say, actually, that's still an open question post-trammel. Oh, yeah, I agree. I totally agree with that. Great. So then in terms of how to answer that open question, I think if you look at von Drunen, Clark, and I think Bird, which came, which is the third set of cases, I think Bird, all of those cases together, do a nice job of justifying why the joint participant exception should continue, should persist post-trammel. And I think, again, von Drunen and Clark make the point that a criminal should not have this assurance that he can enlist a spouse to aid in the criminal enterprise without fear of creating another potential witness. And I find that logic persuasive in a case like von Drunen and Clark in here where the marriage pre-post-dates the criminal activity. That's interesting. That's the reason you give. You're not going to marital harmony. That's not where you started. That is not where I started. Right, and I think for a reason. The reason you're not starting with marital harmony is because, perhaps, you tell me I'm wrong, that trammel puts that rationale on extremely shaky ground. Because what trammel is doing is saying, let the marital harmony judgment be made by the testifying spouse. And I do find more persuasive the truth-seeking function, the truth-seeking rationale. And I think Bird, in particular, has extremely strong language that would support that conclusion. Bird addresses head-on this argument that shows up in the Second Circuit case in re-grand jury subpoena. It shows up in the First Circuit case regarding this idea that you're creating an uncomfortable scene, that there's discomfort in a world in which you're compelling a spouse, one spouse, to testify against another. And Bird head-on addresses that and says that, yes, courts may want to avoid the naturally repugnant sight of a spouse revealing marital confidences on the witness stand. But again, this circuit went on to prioritize, quote, the truth-seeking function of a trial. And it said that it, quote, should not be outweighed by oversensitivity to embarrassing testimony. And so I recognize the analysis, the compelling points in the analysis in Pineda-Matteo. But at the end of the day, when I look at what the Seventh Circuit has said about that exception, in Van Druenen, in Clark, in Bird, in Total, I also see a compelling rationale. I see a compelling rationale that has addressed all of the points that the competing, that the other circuits have raised. I think it's worth noting that the circuit split is not quite as dramatic as I think defendant wants to present it. We have a vast majority of the circuits who have not weighed in on this issue at all. And so I think that should be a factor as well when considering the need for this circuit. I mean, I would posit that there is no need for the circuit to overturn its longstanding exception to the, this joint participant exception to the spousal testimonial privilege. I see that my time is up. I don't know that I had a chance to, I want to make sure that there aren't any other questions that the court would like for me to address. Okay. Thank you very much. I'd ask that you, that this court affirm the district court's judgment. Ms. Eisenman, we'll give you two minutes on rebuttal. So it's a difficult case. There's no need for anybody to hurry. Okay. Thanks. Go right ahead. I really appreciate it. Just if I could address a couple of points, maybe ending where you all left off. Just that, you know, Trammell did a really nice job, I think, of kind of doing a deep dive into this exception and talking about the differences and talking about, you know, it seemed at one point in the opinion like the court was maybe even going to just throw it out altogether. But then it talks about the importance of the spousal testimonial privilege. And it says that the way it wants to balance the truth-seeking function, too, which is important, you know, of a jury trial, is by vesting that ability to invoke the privilege in the witness spouse. It says that is the proper way to balance it. Granted, I have never argued on appeal that Trammell makes an absolute bar. I realize that was argued in the district court. I have not presented that argument on appeal. I'm not saying Trammell says you can never have this or it shouldn't be up to the circuits to decide. But Trammell does a really nice job of saying this is how it's properly balanced. Let the witness spouse decide. Let her decide if there's something in the marriage that's worth saving. Let her decide if she wants to testify. And in some of these cases, we have a witness spouse saying, I'll testify. You know, there's nothing left to this. I'm divorcing this guy. We're done. That is absolutely not what happened here. As the government says in its closing argument, she's in tears. It's uncomfortable for everybody. This is exactly the type of case where the spousal testimonial privilege should be applied. When you pivot over to harmless error, the point that the government's making is, yeah, yeah, yeah, it was all framed and anchored around Adams because the transcript says what it says that way. But the evidence is overwhelming. When you just set aside, there's just no question that you can put him in Hinsdale. You can sync up with the cell site and the other phone records that they're effectively using these phones as walkie-talkies or you permit an inference. And it just gets worse from there. They connect him to the car. They put him in Atlanta. You know, at some point, I mean, you're piling up evidence that this is a Mr. Diggs is in a very difficult position. I understand that. But, again, I think Your Honor did a really nice job of making my argument for me. You know, significantly less persuasive in the mind of the average juror without that testimony. The end. You know, super powerful evidence according to the government. If you want me to address the individual pieces of evidence, I'm happy to do that. This was really well argued by both sides in the district court. The judge did a nice job. Counsel vigorously cross-examined all of the witnesses regarding the 901 phone number, regarding the cell site, you know, saying it actually never pinged to the cell tower that was closest to the robbery. It pinged to one in the area, but not to the closest one. There was evidence that the brother also had access to the car and used the car on occasion. There was Mr. Diggs' brother. So there were lots of different, you know, really good, vigorous cross-examination, and I think that combined with just looking at how powerful the wife's testimony was, you can't say harmless error here. Thank you so much for the extra time. Okay. Very well. Ms. Eisenman, I see here you were appointed by the court to represent Mr. Diggs. You have our thanks for a job very well done to the government as well. The case was very well briefed and argued, and we thank both parties. We take the appeal under advisement. Thank you, Judge.